IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED MATERIALS, INC. and APPLIED MATERIALS ISRAEL, LTD.,<br><br>    Plaintiffs,<br>  v.<br><br>NEGEVTECH, INC. and NEGEVTECH LTD.,<br><br>    Defendants.<br>_____/ | No. C 04-03656 SI<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY; GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On July 1, 2005, the Court heard argument on defendants' motion to stay the proceedings and on the parties' cross-motions for summary judgment on assignor estoppel. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby DENIES defendants' motion to stay; GRANTS plaintiffs' motion for summary judgment; and DENIES defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff Applied Materials and defendant Negevtech both produce wafer inspection products for semiconductors. Negevtech was founded by David Alumot and Gadi Neumann, who had previously worked for Orbot Instruments.[1] While employed at Orbot, Alumot and Neumann were the inventors of the invention disclosed in U.S. patent application number 07/790,871 ("the '871 application"). In December 1991, Alumot and Neumann executed an assignment of their interests in the '871 application to Orbot. In 1997, Applied Materials, which had since purchased Orbot, submitted Application No. 08/984,558 ("the '558 application"). The '558 application was a continuation of the '871 application. The patent-in-suit, U.S. Patent No. 5,982,921, was issued from the '558 application.

Alumot and Neumann founded Negevtech in 1999. Negevtech produces the "302 Wafer Inspection

---

[1] The parties do not dispute that Orbot was later purchased by Applied Materials and that Applied Materials is a successor-in-interest to Orbot.

System," which Applied Materials claims infringes on its '921 patent. As a result, Applied Materials filed suit in this Court against Negevtech for infringing claim 24 of the '921 patent in August 2004.[2] Negevtech has asserted the affirmative defense of invalidity, as well as counterclaims seeking a declaratory judgment that the doctrine of assignor estoppel does not bar Negevtech from challenging the validity of the '921 patent and that the '921 patent is invalid.

Applied Materials brings a motion for summary judgment asserting that Negevtech's invalidity defenses and counterclaims are improper because assignor estoppel prevents Alumot and Neumann, as well as any party in privity with them, from challenging the validity of the patent-in-suit. Negevtech has filed an opposition and a cross-motion for summary judgment on the basis that assignor estoppel does not apply and that Claim 24 of the patent-in-suit is broader than the assigned invention. Negevtech has also filed a Rule 56(f) request, asserting that it needs to complete discovery on the assignor estoppel issue if the Court is inclined to rule in favor of Applied Materials.[3] Finally, Negevtech filed a motion to stay the proceedings while its request for the PTO to re-examine the patent-in-suit is pending. These motions are all before the Court at this time.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. See id. at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party

---

[2] Applied Materials has since amended its complaint, asserting that additional claims of the '921 patent have been infringed.

[3] The documents sought include materials that are the basis of a discovery dispute currently pending before the Court.

2

must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. <u>Id.</u> at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." <u>Id.</u>

**DISCUSSION**

**1.   Motion to stay**

On June 3, 2005, defendants filed a request to the Patent and Trademark Office ("PTO") to re-examine the patent-in-suit, the '921 patent, in light of prior art that defendants claim raises a "substantial new question of patentability." Defendants ask the Court to stay the pending action while the request to the PTO is pending. Defendants argue that a stay is proper, because it will ensure that resources are not needlessly expended before the PTO may decide to alter the claims at issue in this case. Defendants also assert that plaintiffs will not be harmed if the Court grants the stay.

A court has broad discretion over whether to stay patent litigation pending the outcome of a reexamination or reissuance proceeding. <u>See</u> <u>ASCII Corp. v. STD Entertainment USA, Inc.</u>, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). The Court finds that a stay is not appropriate at this time. Defendants filed the request on June 3, 2005 and the PTO has three months from the date of request to make a determination whether it will re-examine the patent. 37 C.F.R. § 1.515. Therefore, a determination could be made as late as September 3, 2005.

The Court finds that the proper course of action is to continue the litigation. The parties have engaged in substantial discovery and currently have summary judgment motions pending before this Court. However, the Court denies the motion without prejudice subject to renewal if the PTO grants the re-examination request. Defendants will not be prejudiced significantly by denying the stay for another two months, particularly given that they waited 10 months from the beginning of this action to file the request to re-examine. Therefore, the

Court DENIES defendants' motion to stay.

**2.    Assignor estoppel**

Defendants do not dispute that the inventors of the '871 application, Alumot and Neumann, assigned their interest in that application to Orbot, their employer. Nor do defendants dispute that the inventors received valuable consideration for the assignment and that the inventors are in privity with defendant.[4] However, defendants claim that the assignment of the '871 application did not convey the invention in the '921 patent, based on a comparison of the scope of the claims being asserted in this action with the assigned invention. Plaintiffs argue that because the patent-in-suit is a continuation of the '871 application, the assignment of Alumot and Neumann's interest in the '871 application is sufficient to warrant assignor estoppel.

On December 12, 1991, Alumot and Neumann assigned their interest in an invention entitled "Optical Inspection Method and Apparatus." The assignment reads as follows:

> For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned:
>
> [David Alumot, Gad Neumann, Rivka Sherman and Ehud Tirosh]
>
> hereby sell(s), assign(s) and transfer(s) to:
>
>    [Orbot Instruments, Ltd.]
>
> (hereinafter called the "Assignee"), its successors, assigns, nominees or other legal representatives, the undersigned's entire rights, title and interest in and to the invention titled:
>
>    Optical Inspection Method and Apparatus
>
> described and claimed in the following Patent Application: US Patent Application S/N 07/790,871 filed November 12, 1991
>
> and in and to said Patent Application, and all original and reissued Patents granted therefor, and all divisions and continuations thereof, including the right to apply and obtain Patents in all other countries, the priority rights under International Conventions, and the Letters Patent which may be granted thereon:
>
> covenant that the undersigned have (has) the full right to convey the entire interest therein assigned:
> []
> and agree(s) to sign all lawful papers, make all rightful oaths, do all lawful acts requisite for such Patent Applications, and do everything possible to aid said Assignee to apply for, obtain

---

[4] Nor does defendant dispute that plaintiff is a successor-in-interest to Orbot.

4

and enforce Patent protection for said invention.

Temkin Decl., Ex. 9.

Defendants focus on the statement in the assignment that the inventors assigned their "entire rights, title and interest in and to the invention titled: Optical Inspection Method and Apparatus described and claimed in the following Patent Application." Defendants argue that the Assignment "thus, by its terms, assigned an invention that was defined by the then-pending '871 application's description and claims." Opp'n at 3. Because the assignment was limited to the description of the invention in the '871 application, defendants assert that the Court must compare the asserted claims to the assigned invention, to determine if the asserted claims are broader than the invention the assignor intended to claim in the application. If the asserted claims are broader, defendants argue that the assignor is not estopped from challenging the validity of the broader claims.

The Court finds that it is unnecessary to determine if the asserted claims are broader than the '871 application. Instead, the plain language of the '871 assignment precludes defendants from challenging the validity of the claims. Specifically, the assignors conveyed to Orbot their interest in the '871 "Patent Application, and all original and reissued Patents granted therefor, and all divisions and continuations thereof . . ." Thus, the assignment itself states that the assignors conveyed all interests in continuation applications to the '871 Patent Application, which includes the patent-in-suit.

Defendants argue that the Court should draw a distinction between the assignment of a patent and the assignment of an invention or an application. Defendants rely primarily on Q.G. Products, Inc. v. Shorty, Inc., 992 F.2d 1211, 1213 (Fed. Cir. 1993), which states that "where . . . a party assigns an 'invention' or application, and the equities advise application of estoppel, the analysis is more elaborate. Unlike assignment of a patent, a party's representations upon assignment are not as clearly bounded."

This case differs from Q.G. Products in two major respects. First, in Q.G. Products the assignor "waive[d] any claim to said invention or contracts relating thereto, and reassign[ed] its rights thereto . . . and agree[d] that neither [assignor] nor any of its remaining principals shall have any interest henceforth in said invention." Id. at 1213-14. The designation of "said invention" led to the court's finding that the assignment was not "clearly bounded," requiring the court to compare the asserted claims with the assigned invention. By contrast, the assignment in this case is "clearly bounded," since the assignors conveyed their interest in the '871

1  Application "and all original and reissued Patents granted therefor, and all divisions and continuations thereof
2  . . ." The assignment in Q.G. Products did not have any provision with respect to continuations of the assigned
3  application.

4  Second, the patent that resulted in the asserted claims against the assignor in Q.G. Products was a
5  continuation-in-part of the assigned application. Id. at 1212. "A continuation-in-part applica-tion, by
6  definition, adds new matter to the parent application previously filed." In re Wertheim, 646 F.2d 527, 536
7  (C.C.P.A. 1981). Because the continuation-in-part application contained new matter, it follows that the court
8  in Q.G. Products compared the asserted continuation-in-part patent with the original application. In this case,
9  the patent-in-suit was issued from the '558 application, which was a continuation of the '871 application. By
10 definition, a continuation should not include material that "constitutes new matter if inserted in the original
11 application." Manual of Patent Examining Procedure (MPEP) § 201.07. Given that this case involves an
12 assignment containing clear language regarding continuing applications and that the patent-in-suit was issued
13 from a continuation of the assigned application, the Court finds that it is unnecessary to determine the scope
14 of the assignment.

15 The Court finds that assignor estoppel is appropriate based on the Federal Circuit's decision in
16 Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220 (Fed. Cir. 1988). In that case, the inventor, Dr.
17 Welter, assigned "all of the rights" in his patent application for an animal vaccination to his employer, Diamond
18 Scientific. Id. at 1222. The patent application resulted in the award of three patents, based on divisional
19 applications.[5] Id. Dr. Welter subsequently left Diamond Scientific to form Ambico, which began manufacturing
20 its own competing animal vaccination. Diamond Scientific filed suit against Ambico, which raised various
21 invalidity defenses. Id.

22 The court found that Ambico was barred from challenging the validity of the patent because when "the
23 inventor-assignor has signed the Oath, Power of Attorney and Petition . . . and has assigned the patent rights
24 to another for valuable consideration, he should be estopped from defending patent infringement claims by

---

[5] The court in Diamond Scientific does not discuss the history of the three patents-in-suit. However, plaintiff has presented the three patents, which demonstrate that they were issued from divisional applications of the assigned application. See Ebertin Decl., Exs. 15-17. A divisional application is a "later application for an independent or distinct invention, carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application." MPEP § 201.06.

6

proving that what he assigned was worthless." Id. at 1226. The court also found it irrelevant that Dr. Welter assigned a patent application, instead of a patent, because he assigned the rights to his inventions. Id. Furthermore, "[t]hat Diamond may have later amended the claims in the application process . . . with or without Dr. Welter's assistance, does not give [defendant's] argument against estoppel any greater force." Id.

As in Diamond Scientific, the inventors in the current case assigned a patent application to their employer. A patent was issued from a continuation application that, by definition, contained no "new matter" from the assigned application, which was also a requirement of the divisional applications in Diamond Scientific. The inventors signed the Oath, Power of Attorney and Petition and assigned the patents rights to Orbot for valuable consideration, as the inventors did in Diamond Scientific. Therefore, assignor estoppel is appropriate. Diamond Scientific, 848 F.2d at 1226.

Defendants argue that a finding of assignor estoppel is not appropriate given a balance of the equities. However, the Federal Circuit has clearly held that when the inventors sign the Oath, Power of Attorney and Petition and have assigned the patent rights to another for valuable consideration, the equities tip in favor of applying assignor estoppel. Diamond Scientific, 848 F.2d at 1226.[6]

Based on the discussion above, the Court DENIES defendants' motion for summary judgment and GRANTS plaintiffs' motion for summary judgment because defendants are estopped from challenging the validity of the '921 patent.

### 3. Rule 56(f) request

Defendants also filed a request under Federal Rule of Civil Procedure 56(f) for the Court to allow them to complete discovery on the assignor estoppel issue. Defendants contend that additional discovery is needed to determine the scope of the inventors' involvement in the prosecution of the '871 application and scope of the invention described in the '871 application.

As discussed above, the Court finds it unnecessary to determine the scope of the invention conveyed

---

[6] Defendants can, of course, challenge the patent-in-suit in other ways, such as: 1) advocating a narrow claim construction; 2) arguing that the patentee is itself collaterally estopped from asserting a patent found invalid in a prior proceeding; and 3) asserting that the accused product is within prior art and cannot infringe. See Mentor Graphics Corp. v. Quickturn Design Systems, Inc., 150 F.3d 1374, 1379-1380 (Fed. Cir. 1998).

7

by the inventors in the '871 application. Therefore, discovery on this issue is also unnecessary. The Court DENIES defendants' Rule 56(f) request.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to stay; GRANTS plaintiffs' motion for summary judgment; and DENIES plaintiffs' motion for summary judgment. [Docket ## 66, 70, 77 and 81.]

**IT IS SO ORDERED.**

Dated: July 13, 2005

                              SUSAN ILLSTON
                              United States District Judge

8